1

2

3

4

5                   UNITED STATES DISTRICT COURT

6                   EASTERN DISTRICT OF WASHINGTON

7   DAOVY S.,

8                              Plaintiff,          NO. 1:23-CV-3074-TOR

9        v.                                        ORDER DENYING PLAINTIFF'S
                                                   MOTION FOR SUMMARY
                                                   JUDGMENT
10  KILOLO KIJAKAZI, Acting
    Commissioner of Social Security,

11                             Defendant.

12

13        BEFORE THE COURT are Plaintiff's Motion for Summary Judgment (ECF

14  No. 10) and Commissioner's Brief (motion) (ECF No. 14).  The case was

15  submitted for consideration without oral argument.  The Court has reviewed the

16  parties' completed briefing and the administrative record and is fully informed.

17  For the reasons discussed below, Plaintiff's request for remand is **DENIED** and the

18  order of the Commissioner is **AFFIRMED**.

19                              **JURISDICTION**

20        The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 1

1    **STANDARD OF REVIEW**

2    A district court's review of a final decision of the Commissioner of Social

3    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4    limited: the Commissioner's decision will only be disturbed if it is "not supported

5    by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

6    1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

7    relevant evidence that "a reasonable mind might accept as adequate to support a

8    conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently,

9    substantial evidence equates to "more than a mere scintilla[,] but less than a

10    preponderance."  *Id.*  In determining whether this standard has been satisfied, a

11    reviewing court must consider the entire record as a whole rather than searching

12    for supporting evidence in isolation.  *Id.*

13    In reviewing a denial of benefits, a district court may not substitute its

14    judgment for that of the Commissioner.  If the evidence in the record "is

15    susceptible to more than one rational interpretation, [the court] must uphold the

16    ALJ's findings if they are supported by inferences reasonably drawn from the

17    record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).

18    Further, a district court "may not reverse an ALJ's decision on account of an error

19    that is harmless."  *Id.*  An error is harmless "where it is inconsequential to the

20    [ALJ's] ultimate nondisability determination."  *Id.* at 1115 (quotation and citation

1    omitted).  The party appealing the ALJ's decision generally bears the burden of

2    establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

3                    **FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

4            A claimant must satisfy two conditions to be considered "disabled" under

5    the Social Security Act.  First, the claimant must be "unable to engage in any

6    substantial gainful activity by reason of any medically determinable physical or

7    mental impairment which can be expected to result in death or which has lasted or

8    can be expected to last for a continuous period of not less than twelve months."  42

9    U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such

10   severity that he is not only unable to do his previous work[,] but cannot,

11   considering his age, education, and work experience, engage in any other kind of

12   substantial gainful work which exists in the national economy."  42 U.S.C.

13   § 423(d)(2)(A).

14           The Commissioner has established a five-step sequential analysis to

15   determine whether a claimant satisfies the above two criteria.  *See* 20 C.F.R. §

16   404.1520(a)(4)(i)–(v).  At step one, the Commissioner considers the claimant's

17   work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in

18   "substantial gainful activity," the Commissioner must find that the claimant is not

19   disabled.  20 C.F.R. § 404.1520(b).

20           If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work").  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

The claimant bears the burden of proof at steps one through four above.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.1560(c); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

1

## ALJ'S FINDINGS

2      On January 4, 2021, Plaintiff applied for Title II disability benefits, alleging

3      an onset date of July 1, 1998, which was later amended to January 1, 2021.[1]

4      Administrative Record (Tr.) 21, 261.  The application was denied initially, Tr. 106,

5      and on reconsideration, Tr. 112.  On June 23, 2022, Plaintiff appeared in a

6      telephonic hearing before an administrative law judge (ALJ).  Tr. 54-76.  On

7      August 10, 2022, the ALJ denied Plaintiff's claim.  Tr. 16-33.

8      As a threshold matter, the ALJ agreed that Plaintiff met the insured status

9      requirements of the Social Security Act through December 31, 2025.  Tr. 21.  At

10     step one of the sequential evaluation analysis, the ALJ found Plaintiff had not

11     engaged in substantial gainful activity from the date of amended onset through the

12     time of the decision.  *Id.*  At step two, the ALJ found Plaintiff had the severe

13     impairment of schizophrenia.  *Id.*  At step three, the ALJ determined that Plaintiff's

14     mental impairment did not meet or medically equal the severity of a listed

15     impairment.  *Id.* at 22-26.  Based on the severity of Plaintiff's impairment, the ALJ

16     _____

17            [1] Plaintiff alleges that she has had a schizophrenia diagnosis since 1998 or

18     1999, but that her symptoms began to worsen in early 2021.  Tr. 28.  Plaintiff was

19     on Social Security benefits for a short time after her initial diagnosis, Tr. 94, but

20     returned to work soon thereafter for the next 20 years, Tr. 254.

decided Plaintiff had the residual functional capacity (RFC) to perform "a full

range of work at all exertional levels" within the following limitations:

> [S]he can understand, remember, and carry out simple and detailed tasks that can be learned in 30 days or less.  She can never perform detailed tasks that require more than 30 days to learn.  She can never perform work requiring a specific production rate, such as assembly line work.  She can tolerate occasional changes in a routine work setting.  She can tolerate occasionally interaction with the general public, coworkers, and supervisors.

*Id.* at 26.

At step four, the ALJ found Plaintiff was incapable of performing any past

relevant work.  *Id.* at 31.  At step five, however, the ALJ determined that jobs

existed in significant numbers in the national economy which Plaintiff could

perform, including work as a janitor, cleaner II, or basket filler.  *Id.* at 32-33.

Based on the foregoing, the ALJ concluded that Plaintiff was not under a

disability from January 1, 2021, through August 15, 2022, the date of decision.  *Id.*

On April 27, 2023, the Appeals Council denied Plaintiff's request for review, Tr. 5,

making the ALJ's decision the final decision of the Commissioner for purposes of

judicial review.  *See* 20 C.F.R. §§ 404.981, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her disability insurance benefits under Title II of the Social Security Act.  Plaintiff

submits the following issues for this Court's review:

1     1.  Whether the ALJ properly weighed Plaintiff's symptom testimony; and

2     2.  Whether the ALJ properly evaluated the medical opinion evidence.

3  ECF No. 10 at 2.

4                              **DISCUSSION**

5  **A.    Plaintiff's Symptom Testimony**

6        Plaintiff argues that the ALJ failed to provide clear and convincing reasons

7  for rejecting her subjective symptom reports.  ECF No. 10 at 4.

8        An ALJ engages in a two-step analysis to determine whether to discount a

9  claimant's subjective symptom testimony.  SSR 16-3p, 2016 WL 1119029, at *2.

10  "First, the ALJ must determine whether there is 'objective medical evidence of an

11  underlying impairment which could reasonably be expected to produce the pain or

12  other symptoms alleged.'"  *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*,

13  572 F.3d 586, 591 (9th Cir. 2009)).  "The claimant is not required to show that [the

14  claimant's] impairment 'could reasonably be expected to cause the severity of the

15  symptom [the claimant] has alleged; [the claimant] need only show that it could

16  reasonably have caused some degree of the symptom.'"  *Vasquez*, 572 F.3d at 591

17  (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

18        Second, "[i]f the claimant meets the first test and there is no evidence of

19  malingering, the ALJ can only reject the claimant's testimony about the severity of

20  the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. § 404.1529(c). In "determining how symptoms limit ability to perform

work-related activities," the ALJ is instructed to "consider all of the evidence in an individual's record."  SSR 16-3p, 2016 WL 1119029, at *2.

Here, Plaintiff claimed that her primary schizophrenic impairments included auditory and tactile hallucinations and delusions, which produced the following secondary symptoms: insomnia, daytime drowsiness, cognitive deficits, concentration issues, anti-social behavior, and other social functioning issues.  ECF No. 10 at 4-6.  The ALJ found that while some of Plaintiff's impairments could be reasonably expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were inconsistent with her objective medical records, engagement in certain activities, and receipt of unemployment benefits.  Tr. 26-27.

### 1. Objective Medical Evidence

The ALJ found that some of Plaintiff's symptom reports were inconsistent with the objective medical evidence, which showed that Plaintiff's impairments were relatively mild and that she experienced improvements with medication.  Tr. 27.  The ALJ noted that Plaintiff's treating psychiatric nurse practitioner, ARNP Sangjan Rungruangkonkit, attested in May and June 2022 that Plaintiff's symptoms had been steadily worsening over the past few years.  Tr. 27.  However, the ALJ rejected this characterization of Plaintiff's symptoms because medical evaluations throughout 2021 and 2022, including exams by ARNP

Rungruangkonkit, indicated that Plaintiff's hallucinations were only mild and intermittent; that Plaintiff was fully oriented; and that Plaintiff had "baseline cognitive function with existing deficits, fair insight and judgment, and no suicidal or homicidal ideation," including normal memory and concentration. *Id.* at 28. The ALJ also noted that both ARNP Rungruangkonkit and Plaintiff's case manager (CM) and mental health counselor, Letrinh Vu, reported that Plaintiff's symptoms had improved with medication management. *Id.* Plaintiff argues that this analysis is unsupported by substantial evidence because the ALJ selectively discussed evidence of Plaintiff's improvements while neglecting to address contemporaneous medical evidence of ongoing symptoms. ECF No. 10 at 10.

An ALJ may not discredit a claimant's symptom testimony solely because the degree of the symptoms alleged is unsupported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, objective medical evidence is a relevant consideration in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2). Mental status examinations are considered objective measures of an individual's mental health. *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Further, ALJs are not expected to discuss every single document in the record that supports their findings; rather, the ALJ must rely on examples from the broader record to support

his conclusions.  *See Garrison*, 759 F.3d at 1018.  "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding."  *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).

The Court finds the ALJ reasonably discounted Plaintiff's subjective symptom testimony based on the record medical evidence.  Plaintiff faults the ALJ for failing to take account of the fact that she was continuing to struggle with her symptoms throughout 2021 and 2022.  However, the ALJ discussed the same objective medical reports which Plaintiff alleges are supportive of her claims.  *See* Tr. 27-28; *see also Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").  Although Plaintiff reported she was continuing to suffer from some auditory hallucinations and delusions during that period (including visions of snakes and fears of sexual molestation), the ALJ observed that exams by ARNP Rungruangkonkit and CM Vu at those same times also established that Plaintiff consistently presented as fully oriented, with normal behavior, insight, judgment, and concentration.  Tr. 27-28 (discussing Tr. 382-83, 386-87, 395, 399, 402, 416-17, 427, 429-300).

Additionally, the ALJ found that Plaintiff's condition improved with medication.  Tr. 28 (citing Tr. 382, 384-85, 394, 396, 399, 417, 422, 425, 432); *see,*

1  *e.g.*, *id.* at 399 ("With quetiapine 1600 mg, [Plaintiff] is much improved."), 432

2  ("[Plaintiff] said she hears 'a lot of voices, especially at night.' [Plaintiff] said it's

3  OK because her meds help her sleep. During the day, the voices aren't bothering

4  [her] too much."). Plaintiff responds that her medications had to be adjusted

5  multiple times to obtain favorable results, that she continued to hear voices at

6  night, and that her exams continually mentioned that she had existing deficits.

7  ECF No. 10 at 12-13.

8       Although Plaintiff's medication was adjusted to help her fall asleep, the

9  adjustment was not as significant as Plaintiff represents. *Compare* Tr. 399 *with* Tr.

10 369 (showing that Plaintiff's dosage of Trazadone was increased from 50

11 milligrams in June 2021 to 100 milligrams in July 2021 to help her sleep); *see also*

12 417 (Plaintiff reporting in August 2021 that she felt like she could sleep with the

13 Trazadone and didn't want to increase her medications any further). Plaintiff also

14 argues that her antipsychotic was changed from Quetiapine to Seroquel in 2022,

15 but Quetiapine *is* Seroquel—"Seroquel" is the brand name for Quetiapine—as

16 made evident by the fact that the two names are used interchangeably in the same

17 medical records. ECF No. 10 at 12; *see, e.g.*, TR 389 (prescribing "Quetiapine

18 (SEROQUEL)").

19      As to Plaintiff's argument that her deficits persisted and she continued to

20 suffer from various auditory hallucinations and tactile delusions, ECF No. 15 at 2,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 13

1    the Commissioner correctly notes that the ALJ did not need to find Plaintiffs'

2    symptoms were fully resolved in order to conclude that they were sufficiently

3    ameliorated by medical treatment. *See Warre v. Comm'r of Social Sec. Admin.*,

4    439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled

5    effectively with medication are not disabling for the purpose of determining

6    eligibility for SSI benefits.") (quotations and citations omitted).  As such, these

7    arguments do not undercut the ALJ's determination that substantial evidence

8    existed in the medical record to support denial of Plaintiff's application for

9    benefits.

10           *2.  Plaintiff's Activities & Receipt of Unemployment Benefits*

11           The ALJ also rejected Plaintiff's symptom testimony based on her activities

12    of daily living, including the fact that she babysat her young niece and nephew,

13    sometimes traveled to Seattle with her brother to visit their mother and go

14    shopping, and made frequent trips to the supermarket store Fred Meyers.  Tr. 28-

15    29.  He further noted that she had "collected unemployment throughout much of

16    the period in question, thereby acknowledging that she was ready, able, and willing

17    to work during the same period she [was] seeking disability."  Tr. 29.

18           An ALJ may consider a plaintiff's activities of daily living and rely on skills

19    transferable to the workplace as a basis for discrediting a claimant's subjective

20    complaints. *Burch*, 400 F.3d at 681.  However, Ninth Circuit case law also stresses

1  that many basic home activities are not transferrable to the workplace environment.

2  *Cottam v. Colvin*, 51 F. Supp. 3d 1038, 1050 (E.D. Wash. 2014).  "The ALJ must

3  make specific findings relating to the daily activities and their transferability to

4  conclude that a claimant's daily activities warrant an adverse credibility

5  determination."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (finding that

6  reading, watching television, and coloring are not transferrable to a work

7  environment).

8      Plaintiff argues that it was error for the ALJ to rely on her caretaking

9  responsibilities over her niece and nephew as a basis for rejecting her symptom

10  testimony, stating her responsibilities were not inconsistent with her claims of

11  forgetfulness and trouble focusing.  ECF No. 10 at 7-8.  In support of this, she

12  points to hearing testimony where she averred that she never watches the children

13  by herself, and that she is unable to assist with basic tasks such as bathing,

14  changing, and dressing the children.  *Id.* at 9 (citing Tr. 68-69).

15      The ALJ's discussion of Plaintiff's childcare activities was not unsupported

16  by the evidence.  As he wrote, Plaintiff "repeatedly reported to her providers that

17  she babysits her brother's young children (ages 2 and 5), stating that . . . this keeps

18  her busy throughout the day and she does this six days a week."  Tr. 29.  Plaintiff

19  accuses the ALJ of failing to credit her hearing testimony that her brother's

20  mother-in-law assisted her with watching the children.  ECF No. 10 at 7.

However, the ALJ's refusal to acknowledge that testimony was tactful in view of the fact that all other record evidence suggests that Plaintiff was the sole or primary caretaker at most times.  Notably, the hearing was the first instance in the record where Plaintiff indicated she was not solely responsible for watching the children.  Tr. 374 (Plaintiff stating she is sometimes paid for babysitting), 394 (Plaintiff representing that she babysits six days a week, that the children are a "handful," and that "she has to watch and run after them"), 398-99 (same). Regardless, however, it was not legal error for the ALJ to find that Plaintiff's self-reports of running after boisterous young children was inconsistent with her allegations that she could not work or interact with others without becoming significantly distracted and disoriented, or that she was having difficulty walking, hearing, seeing, and completing basic tasks without interruption.  Tr. 27.

Plaintiff also asserts that her ability to travel to Seattle to visit her family does not undermine her complaints, and that the ALJ improperly found she was driving approximately 100 miles from her brother's home in Ellensburg, where she then lived, to her mental health appointments in Seattle, when in reality she met with her providers virtually.  ECF No. 10 at 9-10.  As the Commissioner pointed out, however, the ALJ did not find that Plaintiff was driving 100 miles to Seattle, but instead that Plaintiff represented to a provider that her move to Ellensburg would eventually require her to make the trip.  Tr. 28.  Moreover, it was reasonable

for the ALJ to determine that Plaintiff's weekly trips to Seattle to visit family or go shopping did not align with her alleged difficulty to socialize or control her symptoms in public settings.  Tr. 26.

As a final matter, Plaintiff takes issue with the ALJ mentioning that she collected unemployment benefits during a portion of her period of disability.  Tr. 29.  Plaintiff contends that receipt of unemployment benefits alone is not a valid reason to discount her testimony where she did not affirmatively hold herself out as available for work.  ECF No. 10 at 13.  She also maintains that her receipt of benefits was "more consistent with pandemic assistance [than unemployment benefits] which . . . does not require a person to attest that they are ready, willing, and able to perform full-time competitive employment."  *Id.* at 14.  The Commissioner responds that her characterization of the benefits as pandemic-related is speculative, but that even if it was error for the ALJ to discuss Plaintiff's receipt of the benefits, the error was a harmless one because he rejected her symptom reports based on other valid reasons.  ECF No. 14 at 9.

"Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds [herself] out as capable of working." *Ghanim*, 763 F.3d at 1165; *but see Schwarz v. Kijakazi*, No. 22-35792, 2023 WL 8271968, at *1 (9th Cir. Nov. 30, 2023) (unreported) (stating that in Washington, it may be possible to be both eligible for unemployment benefits and disabled under

Social Security disability criteria). Accordingly, it is debatable whether it was reasonable for the ALJ to assume that Plaintiff was representing herself as capable of working. But even assuming that this was instead some form of pandemic assistance or that Plaintiff's receipt of unemployment benefits was allowable, the Commissioner's rejection of Plaintiff's symptom reports was free from harmful error because it was supported by other clear and convincing evidence, including Plaintiff's medical records and other lifestyle activities. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (harmless error standard applies when the error "does not negate the validity of the ALJ's ultimate . . . conclusion") (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004)). As such, the Court finds that the ALJ offered sufficiently clear and convincing reasons for discounting Plaintiff's symptom testimony.

## B.    Medical Opinion Evidence

Plaintiff criticizes the ALJ's rejection of ARNP Rungruangkonkit's July 2021, May 2022, and September 2022 psychiatric reports. ECF No. 10 at 15-20. For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. 20 C.F.R. §§ 404.1520c, 416.920c; *see also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017).

Under the new regulations, the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s)." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844-01, 5867–68. Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including but not limited to "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5).

The ALJ is required to explain how the most important factors, supportability and consistency, were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). These factors are defined as follows:

(1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

1
2
medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

3
20 C.F.R. §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

4
The ALJ may, but is not required to, explain how "the other most persuasive

5
factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§

6
404.1520c(b)(2); 416.920c(b)(2).  However, where two or more medical opinions

7
or prior administrative findings "about the same issue are both equally well-

8
supported . . . and consistent with the record . . . but are not exactly the same," the

9
ALJ is required to explain how "the most persuasive factors" were considered.  20

10
C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).

11
Plaintiff argues that the ALJ improperly rejected ARNP Rungruangkonkit's

12
assessments by finding the opinions inconsistent his own predetermined view of

13
Plaintiff's symptoms and finding the opinions inconsistent with and generally

14
unsupported by Plaintiff's responsiveness to medication, activities of daily living,

15
and self-reports of continued symptoms.  ECF No. 10 at 17-21.  For the reasons

16
aforementioned in Part A of this opinion, the Court finds that the ALJ adequately

17
considered the supportability and consistency factors in discussing Plaintiff's

18
medical treatment, activities, and reports of improvement.  *See supra* Part A at 10-

19
18; *see also* Tr. 30.  The Court also declines to credit Plaintiff's supposition that

20
"the ALJ appear[ed] to craft an RFC and reject[ ] the provider's opinion because it

1    is inconsistent with it." ECF Nos. 10 at 18; 15 at 10. There is no evidence that the

2    ALJ rejected ARNP Rungruangkonkit's opinions solely because they were

3    inconsistent with the RFC or his own prejudged view of the case.

4         Regarding the consistency of ARNP Rungruangkonkit's opinions with the

5    medical opinions of other providers, the Court similarly finds the ALJ's analysis

6    supported by clear and convincing evidence. *See* 20 C.F.R. 416.920c(b)(2)

7    (prescribing that the Commissioner must consider inconsistency as a factor). In

8    addition to finding that ARNP Rungruangkonkit's opinions were inconsistent with

9    and unsupported by her own normal mental status examinations of Plaintiff,

10   Plaintiff's medical improvements, and Plaintiff's activities, the ALJ also noted that

11   her opinions were also inconsistent with the findings of State-hired medical expert

12   Dr. Howard Atkins, which he found persuasive. Tr. 30. Dr. Atkins reviewed

13   Plaintiff's file and determined she was "capable of simple repetitive tasks without

14   strict production quotas and [with] infrequent interaction with others." *Id.* He

15   further determined that she had "moderate limitations in understanding,

16   remembering, or applying information, interacting with others, and concentrating,

17   persisting, or maintaining pace," as well as "mild limitations in adapting or

18   managing herself." *Id.* By comparison, ARNP Rungruangkonkit reported that

19   Plaintiff had severe limitations in these areas. *Id.* at 29. The ALJ credited Dr.

20   Atkins's report because:

1
2
3
4
5
6
7

> [D]espite being inconsistent with the review of Dr. Smith, the other state agency evaluator who found no significant limitations, and the assessments of ARNP Rungruangkonkit, who overestimated the claimant's limitation, . . . Dr. Atkins' evaluation of the claimant's functional limitations is supported by the evidence in the record, to include the treatment notes and repeated mental status exams by ARNP Rungruangkonkit and CM Vu, the repeated assertions by these providers that the claimant sees significant improvement and retains adequate symptom management and intact baseline functioning on her medication plan, and the claimant's reported activities of daily living, all of which show that no more restrictive limitations are warranted than those found in the residual functional capacity above.

8

Tr. 30.

9
10
11
12
13
14
15
16
17

The ALJ appropriately articulated why he found Dr. Atkins's report better supported by the medical evidence than ARNP Rungruangkonkit's. As he indicated, those inconsistencies rendered ARNP Rungruangkonkit's opinions less persuasive than Dr. Atkins's. *Id.*; 20 C.F.R. §§ 404.1520c(c)(1)–(2). Accordingly, because the ALJ sufficiently explained how the factors of consistency and supportability were considered in weighing the opinions of the medical experts, the Court finds that the ALJ's rejection of ARNP Rungruangkonkit's reports was supported by substantial evidence. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

18

//

19

//

20

//

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes that the final decision of the Commissioner is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1.  Plaintiff's Motion for Summary Judgment (ECF No. 10) is **DENIED**.

2.  The Commissioner's Brief (motion), ECF No. 14, is **GRANTED**.

3.  The final order of the Social Security Commissioner denying Plaintiff's application for Title II benefits is **AFFIRMED**.  Judgment is entered in favor of Defendant.

The District Court Executive is directed to enter judgment in favor of the Defendant, furnish copies to counsel, and **CLOSE** the file.

DATED December 7, 2023.



THOMAS O. RICE
United States District Judge